# Henry S. Knarr, Assignee of Calvin Sloppy, Plff. in Err., *v.* John Elgren.

Until overcome by testimony which, if believed, ought to move a chancellor to decree the note on which a judgment is entered void, or to be reformed because of forgery, fraud, or mistake, the judgment should not be opened.

That the maker of the note cannot read the language in which it is written is a fact to be considered; still, the burden is on him to establish that it was falsely read, or represented to be other than what is written.

(Argued May 5, 1887.   Decided June 1, 1887.)

January Term, 1887, No. 311, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Clearfield County to review a judgment on a verdict for the defendant in an action of debt. Reversed.

John Elgren, the defendant, gave to Calvin Sloppy (also written Calvin Slopp) a judgment note under seal for $500, with interest, attorney's commission, etc., dated March 7, 1885, payable one month after date. Both parties lived at DuBois, in Clearfield county. March 9, 1885, judgment was duly entered upon this note, in the court of common pleas of Clearfield county, of No. 182, May term, 1885. March 21, 1885, this note was duly assigned in writing by the plaintiff to Henry S. Knarr, and the assignment filed March 23, 1885.

In April, 1885, on application of the defendant, a rule was granted to show cause why the judgment should not be opened. Depositions were taken and read upon the argument of this rule; and July 21, 1885, the judgment was opened, and the defendant let into a defense. The cause was tried in May, 1886.

The evidence adduced at the trial is reviewed in the charge to the jury.

Counsel for the defendant asked the defendant, *inter alia:*

*Q.* State if you had any business transactions with Fowler and McMinn in 1884.

Objected to by the plaintiff.

By the Court: "What is the purpose of the question?"

Mr. Wilson: "The purpose is to show that at the time he sold the property to these gentlemen and received $1,015, that he deposited that money—that he had money in bank in 1884."

Objected to by plaintiff as irrelevant and incompetent.

Objection overruled, evidence admitted. Fifth assignment of error.

The counsel for the defendant also asked Charles Fowler, a witness for the defendant:

*Q.* Did you ever have any transactions with John Elgren? If so, what was it, and when was it?

*A.* I spoke to him of selling his property—he wanted to sell it.

*Q.* What year was it?

Mr. Cole: "State what you propose to prove."

Mr. Wilson: "We propose to prove that Elgren sold his property to Fowler and McMinn, and that Fowler paid him $1,015 in money at that time. This was for the purpose of showing that John Elgren had money in his possession at this time and also to corroborate John Elgren."

Mr. Cole: "Objected to as incompetent and irrelevant."

Objection overruled, evidence admitted. Sixth assignment of error.

KREBS, P. J., charged. the jury as follows:

This is a proceeding to determine whether or not the defendant is indebted on this note to Calvin Sloppy, or his assignee, H. S. Knarr. On the 9th of March, 1885, the note was filed of record in the prothonotary's office in this county. It bears date the 7th day of March, 1885, is due at one month after date with interest at 5 per cent, and is for $500, with a warrant of attorney which authorized the prothonotary, under the laws of Pennsylvania, to enter it of record as a judgment. It is signed by John Elgren, and is not disputed so far as the signature is concerned.

On the 24th of March, 1885, a paper was filed showing a statement of this judgment that had been entered by Mr. Kerr, the prothonotary, a statement which they usually give or send to every person who leaves or sends a judgment note if it is sent by mail. On the back of that statement there is an assignment, partly in printing and partly in writing, bearing date the 21st of March, 1885, signed by Calvin Sloppy, transferring this note or judgment as it was then (it having been entered of record) to H. S. Knarr, his heirs, executors, or assigns.

After the execution was issued upon this judgment the defendant came into court and presented a petition setting forth certain facts, and asking the court to open that judgment and let him into a defense. Subsequently an order was made by the court staying the writ of execution and maintaining the levy and lien of the writ of fieri facias, and the judgment was opened and the defendant let into a defense. The case is now upon the trial list and before you for your disposition. The reasons for this proceeding are that on the hearing of the testimony taken on a commission on the order to open this judgment there were some disputed facts between these parties, that we thought we had no power to decide it, and it must be decided by a jury; therefore the order was made that the case should be put upon

the trial list and presented to a jury, who should determine what the facts were in regard to this note.

In this trial you will have observed that the plaintiff offered this note signed by Elgren, the signature not being disputed, and rested his case. That made out a prima facie right to demand the amount of this note, and it then became the duty of the defendant to show what his defense to the note was. In pursuance of that the defendant was called to the witness stand, and he details what he alleges were the circumstances attending the making of this note. As we stated before he admits signing the note, but testifies and claims that at the time he signed this note he could not read it himself; that it was signed, as we understand it, after dark or late in the evening, in the office of 'Squire Williams; that the 'Squire was not there, but that Sloppy urged him to sign it, he (Sloppy) saying that it was all right, and that he (defendant) signed it believing it to be a $5 note; that he did not know that it was a $500 note; that, under the representations made to him that it was a $5 note, he signed it, and he says that at that time he owed Sloppy $5.50.

He also states that the 50 cents was spoken of subsequently; that one day, a short time after this, he went or spoke to a man about having some small change to pay Sloppy the 50 cents, but that nothing was done at that time about the 50 cents. He also states that he had a transaction with Sloppy on the street. It appeared that he owed one J. Christ a board bill, and had left his (defendant's) watch as a pledge or security for this board bill; that the amount owed was $15.50; that Sloppy offered to loan him the money in order to get his watch; that he did get from Sloppy the $15.50 to pay the board bill, and left his watch; that subsequently Sloppy got from him a set of harness worth $10, which left him (defendant) owing Sloppy $5.50; that he believed at the time he signed this note that the note was for $5 of that $5.50, and that he did not know it was a $500 note.

The defendant also called Truman Ames, a member of the bar, living at DuBois, to the witness stand, who says that about the time of this transaction (I do not remember whether he states the day) Calvin Sloppy came into his office after supper or about the time of lighting the lamps, as we remember the testimony, and asked him (Ames) whether he had a blank judgment note, and he said he had; that he (Sloppy) asked him to fill

one up, and at his dictation, he (Ames) dated it that day, the 7th of March, payable to Sloppy, for the sum of $500; that Sloppy did not say who it was to be signed by; that he did not ask him, and Sloppy went out. So that it would be in the evening after supper of the 7th of March. Of course, whether it was the dusk of evening or dark would depend somewhat upon the time that Mr. Ames had supper.

Elgren (defendant) testifies that he and Sloppy met on the street that evening and Sloppy asked him to go to 'Squire Williams's and sign this note, and that he did go and sign the note— which he claims was not a $500 note but a $5 note. Now, if that be true, for that is all there is in this case, if he signed this note under the belief that it was a $5 note and not a $500 note, and that his signature was procured by the fraud and misrepresentation of Sloppy, it would not be valid as between him and Sloppy; it would be such a fraud upon him (defendant) as could not stand, if his testimony be true in regard to the making of this note.

But the note has passed into the hands of H. S. Knarr. It is not negotiable; so that Mr. Knarr was bound to inquire and know whether or not Elgren had any defense to it before he could take it. If he (Knarr) took it without any inquiry at all, it not being negotiable, Mr. Elgren has the same defense against Knarr that he would have against Sloppy. But it is alleged on the part of the plaintiff in this case, Mr. Knarr, who is the equitable plaintiff and assignee of the note from Sloppy, that he (Knarr) did go to Elgren and inquire of him whether or not he owed Sloppy the amount of this note, and that Elgren told him (Knarr) that it was "all right," he (Elgren) owed him (Sloppy) $500.

Other witnesses are called by Mr. Knarr to show that he (defendant) stated to other persons that he owed Sloppy $500. To one or two of the witnesses, as we remember the testimony, when asked whether or not he owed that Sloppy note, he said the note was all right. Now if before Mr. Knarr bought this note he went to Elgren and inquired of him whether or not he owed Sloppy the amount of this note, Elgren was in duty bound to disclose any defense he had to it, and it becomes an important inquiry between these men to know whether or not they understood each other.

If the inquiry was made in such a way as that Elgren under-

stood what Knarr was inquiring about; if Elgren knew at the time what the inquiry of Knarr was, and Knarr used language inquiring whether or not he owed Sloppy $500, and he (Elgren) said that he did, and after that Knarr bought this note for a valuable consideration, in good faith, then he (Knarr) must be protected, whether it was a bona fide note or not, because it was the duty of Elgren at that time to disclose any defense he had to it. If he (Elgren) understood this note to be for $500 from Knarr's declaration, he was bound to say so, because it is alleged by Knarr that he bought it on his (Elgren's) declaration, then he (Elgren) would have to pay it whether it was all right between him (Elgren) and Sloppy or not.

The other testimony in regard to Elgren, stating that it was a $500 note, is simply as corroborating the testimony of Mr. Knarr. As we recollect it (unless it be the testimony of Mr. Rudolph) it is all subsequent to the time at which Knarr got the note; and although he may have said so at the time Knarr got the note, yet if Knarr parted with his money without proper inquiry, although he (Elgren) may have said to other persons afterwards that it was all right, yet that would not help Mr. Knarr. But this is evidence as bearing upon the question of whether or not he said so to Mr. Knarr.

Now, Mr. Rudolph testifies, if we remember his testimony, that about the first of March he had a conversation with Mr. Elgren at the house in which he (Elgren) was then living; that he took dinner there one day, and Elgren complained that Sloppy was going to make him trouble; that when he asked why, he (Elgren) said he owed Sloppy $500, and he (Sloppy) was going to push him. Now, if that was on the first of March it was not this note that was referred to, because this note was not made until the 7th of March. But it may have had reference to the note which Sloppy says this note was given in exchange for.

In Sloppy's reference to the transaction (in his deposition) he says that in 1884 Elgren had borrowed $500 from him and given this note. This 1884 note was due on the 7th of March, 1885, and this note dated the 7th of March, 1885, was given in renewal of the old (1884) note. Now, as bearing on that question, some evidence has been put in here as to the necessity of Mr. Elgren for borrowing money at that time. Evidence has also been offered to show that at that time he (Elgren) had sold property, and that he had got $1,015 in money out of that prop-

erty; that he paid off some indebtedness and had $690 in bank; that he drew out of bank $400, and of that amount paid $375 to a man by the name of Casey, and had $25 of money in his pocket. Although that testimony may not be very material in a question of this kind, yet the jury has a right to consider that as bearing upon the question of whether or not he did borrow this money from Sloppy in 1884, and gave him a note for $500.

It is also offered on the part of the plaintiff (Knarr) in this case, that Sloppy, at different times, had considerable amounts of money. That would be evidence as to whether or not he had any money to loan in 1884. It bears, however, upon the question of whether or not this note was made for $500 by Sloppy. But the principal question you have to determine in this case is whether or not before Mr. Knarr bought this note he went to Elgren and inquired if he owed Sloppy this amount of money. That is the principal question; because even if you should determine that the note was signed by Elgren as a $5 note, yet if, when Knarr came to buy it, before he bought it or parted with his money, he went to Elgren and inquired about this transaction and asked him if he owed this $500, and the old man (Elgren) understood it; if it was spoken to him in such a way that he (Elgren) understood it and said it was all right, he owed the $500, then he would have to pay this note if he can; because, as we said before, he was bound to disclose any defense that he had to it.

Now, take this case, because it is all a question of fact, and dispose of it as under the evidence you think right and proper. Court and jury are not to be moved by any feeling of sympathy for one side or the other. We are to try this case by the testimony as produced for the one side or the other. You have a right to inquire into the testimony of the witnesses, their demeanor on the witness stand, the manner in which they testify, and the reasonableness and probability of their story.

On the question of whether or not a person's reputation for truth and veracity is successfully attacked, we have just a few words to say. Of course, the weight of the testimony is for the jury; but, speaking for ourselves, we do say that we would place very little reliability upon an attack made upon a witness through the difficulties arising in such matters.

A man's reputation for truth and veracity may be attacked in any case. In cases of this kind everybody has his friends, and

they have talked about the matter. Each side has its adherents, and they say all kinds of things, and in that way a man's reputation is attacked. But for ourselves, we do say that we would give very little credit to such a state of proceedings. As to the weight that shall be given to the attack upon Mr. Sloppy and Mr. Elgren, that is for you. If their reputation for truth and veracity has been successfully attacked, of course it would be material, and for your consideration.

[Now, if you find that this note was not given for $500 knowingly by Mr. Elgren, and that Mr. Knarr did not disclose to Mr. Elgren, that is, did not inquire of him in a way by which he (Knarr) could make himself understood by this old Swede, and he (Elgren) did not know what the interrogatory was, then there could be no recovery for anything in this case, not even for the $5 which he (Elgren) owed Sloppy; because this would be a fraudulent paper, and there could not be anything recovered on it. We do not agree with the counsel for defendant upon that subject. But if you find that Knarr did go to the defendant (Elgren) and make his business known, and he (Elgren) understood what that business was and then did not disclose what his defense was, he (Elgren) must pay the note, whether it was a valid transaction with Sloppy or not.][2]

Verdict and judgment were for the defendant.

The assignments of error specified: (1) The action of the court in opening the judgment; (2) the portion of the charge inclosed in brackets; (3) the action of the court in submitting the case to the jury; and (4) that the charge as a whole, under the facts in the case, was erroneous and misleading.

*A. L. Cole* and *McEnally & McCurdy,* for plaintiff in error. —A judgment should not be opened unless it appears that it was originally confessed for more than in equity and good conscience was then owing by the defendant. Saunders v. Mather, 3 Sad. Rep. 346.

Where there is only the unsupported oath of one of the parties to the instrument on the one side, and the opposing and the contradictory oath of the other party, together with the words of the instrument on the other side, such unsupported oath is not sufficient to justify the reformation of the instrument. Jack-

son v. Payne, 114 Pa. 67, 6 Atl. 340; Phillips v. Meily, 106 Pa. 536.

Where a party comes in and asks to be relieved from the terms of a written instrument which he admits he signed, to justify the court to act he must present facts, supported by such evidence as would satisfy a chancellor to reform the paper. Thorne v. Warfflein, 100 Pa. 519; Nicolls v. McDonald, 101 Pa. 514; Smith v. National L. Ins. Co. 103 Pa. 184, 49 Am. Rep. 121; North & West Branch R. Co. v. Swank, 105 Pa. 555.

To set aside a written instrument on the ground of fraud, the evidence thereof must be clear, precise, and indisputable, and of that which occurred at the execution of the instrument. Cummins v. Hurlbutt, 92 Pa. 165.

*Smith V. Wilson* and *Murray & Gordon,* for defendant in error.—The opening of a judgment upon a warrant of attorney is a matter of sound discretion. On appeal under act of 1877, the supreme court will only determine whether such discretion has been rightly exercised. Earley's Appeal, 90 Pa. 321; Wernet's Appeal, 91 Pa. 319; Schenck's Appeal, 94 Pa. 37; Kneedler's Appeal, 92 Pa. 428; Lyon v. Phillips, 41 Phila. Leg. Int. 215; Wise's Appeal, 99 Pa. 195.

Fraud avoids all contracts and consists in false representations of things as facts which are not such, or in deceitful concealment of existing facts. Grove v. Hodges, 55 Pa. 504.

Actual fraud is for the jury. Loucheim Bros. v. Henszey, 77 Pa. 305; Rogers v. Hall, 4 Watts, 362.

On an allegation of fraud great latitude of proof is allowed. Baltimore & O. R. Co. v. Hoge, 34 Pa. 221.

Where a judgment is opened without terms (as in this case) the burden of proof is on plaintiff. Ham v. Smith, 87 Pa. 63; Carson v. Coulter, 2 Grant Cas. 121.

Where investigations are founded on imputed fraud they naturally take a wide range. Among the most common topics of inquiry is the pecuniary capacity of the supposed lender and the necessitous condition of the alleged borrower; and these inquiries are legitimate. It is surely competent for the defendant to show that the plaintiff was, at the time of the alleged lending, a poor man, and probably unable to loan the sum in question, or that the defendant was himself possessed of money, and there-

fore not driven to the necessity of using his credit.    Stevenson v. Stewart, 11 Pa. 307.

This court having decided that an appeal lies to the final judgment on the issue awarded under the act of April 4, 1877, and that having been done in this case, we submit that the writ of error should be quashed, at the costs of plaintiff in error.    Citizens' Bldg. & L. Asso. v. Hoagland, 87 Pa. 326; Springer v. Springer, 43 Pa. 518.

OPINION BY MR. JUSTICE TRUNKEY:

The act of April 4, 1877, provides that in all cases of application to have any judgment opened which has been entered by virtue of a warrant of attorney, or upon a judgment note, the parties aggrieved by the decision of the court of common pleas may have the same reviewed by appeal in like manner and proceeding as equity cases are now appealed.

Prior to the enactment of this useful statute the defendant who applied to have such judgment opened was compelled to submit to the decision of the court of common pleas as final when entered against him, unless he resorted to a formal bill and proceeding in equity, which was the only practical remedy for relief from an unjust judgment.    In either form of procedure the relief demanded is in equity; and the applicant or complainant must make a case which would justify a chancellor in entering the decree.

The judgment in this case should not have been opened, nor the evidence submitted to the jury.    Until overcome by testimony that, if believed, ought to move a chancellor to decree that the writing is void, or should be reformed, because of forgery, fraud, or mistake, it must be suffered to stand, although the parties thereto so testify that, under the circumstances, it is difficult to avoid belief that one or the other has committed perjury. That the maker of the note cannot read the language in which it is written is a fact to be considered; still, the burden is on him to establish that it was falsely read, or represented to be other than what is written.

Elgren and Sloppy both testify positively and each contradicts the other.    According to the testimony of their neighbors, their reputation for truth and honesty is so bad that if the two go together, they are well matched.    Hence, where either has the burden of proving a fact by two witnesses, or one witness and

corroborating circumstances he should be held strictly to the rule, when the only witness is himself.

There is some testimony tending to show that Sloppy was poor and did not have the money to lend. This is met by direct testimony that he did have money. Although positive testimony that Sloppy had money may be more satisfactory than testimony of circumstances tending to show that he had not, the question is whether these circumstances would justify a finding that he could not by reason of poverty have made the alleged loan. We think not.

Taken by themselves, they would not warrant a jury in rendering a verdict for the defendant because the note was without consideration. Here, the direct testimony against the defendant is strong, and cannot be lightly cast aside. Knarr and Rudolph testify to Elgren's admission that he gave the note to Sloppy for $500 and that it was right; and Hepburn, Forcey, and Smith to his admissions utterly inconsistent with his belief that the note was fraudulent or forged. Before Knarr purchased, in answer to inquiry, Elgren told him the note was right and to buy it. To Rudolph he complained that Sloppy was crowding him for a debt of $500 and would break him. And to others when asked if it was true that Sloppy had forged a note on him for $500, he replied: "There is nothing in it."

Were this cause tried in a court of equity in a proceeding commenced by bill, it would be dismissed. That it was commenced in another form does not prevent application of the same principles.

Judgment reversed.

